IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID ROBINSON,

    *Plaintiff,*

v.

JESSIE KIRSCH, et al.,

    *Defendants.*

CIVIL ACTION
NO. 19-953

**PAPPERT, J.**                                                                                                   May 19, 2022

### MEMORANDUM

David Robinson, a former inmate at Berks County Jail proceeding *pro se*, claims one of the jail's physician assistants, Jessie Kirsch, and nurses, Leona Wilkinson, took away ACE bandage wraps he was prescribed for his carpal tunnel syndrome.[1] Robinson contends his medical records prove he needed braces for his condition and that the jail could have provided them to him.

Robinson sued Kirsch and Wilkinson for deliberate indifference to his medical needs under 42 U.S.C. § 1983 and medical malpractice under Pennsylvania law. Kirsch and Wilkinson moved for summary judgment. And after considering the parties' filings and reviewing the record evidence, the Court grants the motion because no reasonable jury could conclude Kirsch and Wilkinson were deliberately indifferent in treating

---

[1] Robinson asked the Court on multiple occasions to appoint him counsel. The Court granted two of these requests and twice referred the case to this District's Prisoner Civil Rights Panel. The Court removed the case from the Panel when no attorney entered an appearance before the referrals expired. (ECF 23–24, 26, 41–42 and 44.)

1

Robinson and he presents no expert testimony to show they committed medical malpractice.[2]

I

A

Before being incarcerated in the Berks County Jail in November of 2018, Robinson complained of numbness in his arms and hands. (ECF 52 at 5–6; ECF 53 at 43.) He says he was seen by a specialist at Einstein Medical Center and diagnosed with neuropathy in both hands, namely carpal tunnel syndrome. *See* (Am. Compl. 5, Exs. 4, 9, ECF 8; ECF 53 at 41–42). In fact, a May 2018 electromyography nerve conduction study identified evidence of carpal tunnel and no evidence of cervical radiculopathy, which also can cause arm and hand numbness. (ECF 49 at 4; Ex. B 334.) But Robinson was diagnosed with cervical radiculopathy and treated for cervical spine issues. (Ex. B 328, ECF 55-3); *e.g.*, (*Id.* at 357 (April 8, 2018 cervical spine MRI)).

In November or December of 2018, Robinson requested support braces from the Berks County Jail medical department. *See* (Am. Compl. Ex. 1, 4). According to Robinson, he "[n]eeded" the braces to relieve wrist pain. (Am. Compl. 5.) Without the braces or surgery, he says his wrists will suffer "further damage." (*Id.*)

On January 23, 2019, Robinson was seen by Dr. Wloczewski, who prescribed him ACE wraps for his carpal tunnel syndrome. (Ex. B 257–58; ECF 53 at 21.) Less than a week later, Robinson came to an appointment with Wilkinson without his wraps. (ECF

---

[2] Before Defendants filed their Motion, Robinson filed three "Motion[s] to Submit Discovery Exhibits" with attached medical records and other documents supporting his arguments in this case. (ECF 49; ECF 52; ECF 53.) The Court grants Robinson's Motions and considers their attachments. Robinson's summary judgment exhibits at ECF 49, 52 and 53 are referred to using ECF page numbers.

53 at 18.) According to Wilkinson, Robinson told her that the wraps were not helping him, that he wants the braces he has at home and that his girlfriend would bring them to him. (*Id*.) Robinson, however, says Wilkinson's account is "inaccurate" because he actually told her the wraps "do not work as well" as the braces. (ECF 53 at 7.)

Kirsch saw Robinson on January 29, 2019. (ECF 53 at 32.) Robinson told Kirsch about his carpal tunnel syndrome and treatment by a hand specialist at Einstein and said he wanted wrist splints. (*Id*.) Kirsch, however, told Robinson he could not have metal splints and Robinson understood this. *See* (*id*.). Based on Robinson's description of his condition, Kirsch concluded he had carpal tunnel and also planned to obtain Robinson's records from Einstein. (*Id*.)

The records Kirsch received from both Einstein and Robinson's primary care provider did not state a carpal tunnel syndrome diagnosis or indicate Robinson was prescribed or otherwise needed braces. (Defs' Statement of Undisputed Facts ("SUF") ¶¶ 11–12, 14 (citing Ex. B 319–67), ECF 55.) The records did show, however, that Robinson experienced hand numbness and that he had "[n]europathy of hand"—an umbrella term that encompasses carpal tunnel (along with other neuropathies). (Ex. B 360–61, 63.) But the records also showed Robinson was treated for cervical spine issues and diagnosed with a condition that can cause hand numbness. *See supra*; (SUF ¶ 13).

In Robinson's view, the Berks County Jail's medical staff "could have given me proper support splints" at the time—either braces in its possession, with their metal components removed, or his braces from home. (Pl's Interrog. Resps., Ex. A 10, ECF 55-2.) Robinson claims that in the prison where he is currently incarcerated, Primecare

Medical Inc.—Berks County Jail's inmate medical provider—gave him appropriate braces. *See* (*id.*).

B

On February 1, 2019, Wilkinson saw Robinson, who again was not wearing the ACE wraps. (ECF 53 at 18.) When Robinson told Wilkinson he wears the wraps at night and when he has pain, she told him they are effective only if he wears them all the time. (*Id.*) Robinson also asked for two new wraps. (*Id.*) Wilkinson then spoke about this exchange with Kirsch, who ordered that Robinson's wraps be taken away that day. *See* (ECF 53 at 14, 17–18, 22).

Robinson says his wraps were confiscated because he wasn't wearing them when Wilkinson saw him on January 29 and February 1. *See* (Am. Compl. Att A, Ex. 9; ECF 53 at 14, 18). But according to the medical records Robinson submitted, an unidentified jail staff member told an employee at Chester County Prison—to which Robinson was transferred on February 4, 2019—that Robinson's wraps were taken away because he was lifting weights with them on. (ECF 53 at 34; Ex. B 310.) Robinson claims there are no weights at Berks County Jail. (Pl's Interrog. Resps. 10.)

Moreover, according to Robinson, Kirsch said Robinson's doctor told Kirsch that Robinson doesn't have carpal tunnel syndrome. *See* (Am. Compl. Att. A, Ex. 9). In fact, a Berks County Jail employee told a Chester County Prison staff member that the jail didn't have records supporting Robinson's diagnosis at the time. (ECF 53 at 34); *see also* (SUF ¶¶ 11–12). Several days later, however, Robinson told the jail's medical department that Einstein had the "results for my neuropathy"—presumably his EMG assessment showing evidence of carpal tunnel. *See* (ECF 53 at 27; ECF 49 at 4). But

4

there is no evidence either Kirsch or Wilkinson saw this message. In fact, a different jail employee responded to it. (ECF 53 at 27.)

Robinson claims Kirsch didn't speak with Robinson's doctor about his carpal tunnel syndrome. *See* (ECF 53 at 9). He says Kirsch refused to show Robinson his medical records because they were protected by the Health Insurance Portability and Accountability Act. (Am. Compl. Att. A, Ex. 9; ECF 53 at 9.) That law, however, allows requesting patients to access their medical information, and Robinson also consented to Primecare releasing his records. *See* 45 CFR § 164.502(a)(1)(i); (ECF 53 at 19). In addition, according to Robinson, both he and his mother contacted Robinson's doctor, who told them she never spoke with Kirsch. (Am. Compl. Att. A.)

## II

### A

Summary judgment is proper if the movant shows there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A fact is material if it "might affect" the case's outcome "under the governing law," and a genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A mere "scintilla" of evidence supporting the nonmovant will not suffice; rather, to avoid summary judgment, he must "set forth specific facts showing that there is a genuine issue for trial" and cannot "rest upon" pleadings. *Id.* at 252, 256. While a court must "liberally construe" a *pro se* plaintiff's complaint and "apply the applicable law" regardless whether he has "mentioned it by name," such a plaintiff still faces the "formidable task" of "producing evidence" sufficient to create a

5

genuine dispute for trial. *See Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003); *Zilich v. Lucht*, 981 F.2d 694, 696 (3d Cir. 1992) (quoting *Anderson*, 477 U.S. at 248).

A court can consider any material in the record that may be admissible at trial, and must "view the facts in the light most favorable to the nonmoving party and draw all inferences" in his favor. *See* Fed. R. Civ. P. 56(c)(2); *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009) (internal quotation marks omitted). But it need not credit "[u]nsupported assertions, conclusory allegations, or mere suspicions." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010); *see also Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 228 (3d Cir. 2009) ("speculation and conjecture" will not defeat a summary judgment motion). Additionally, the court cannot make credibility determinations or weigh the evidence. *See Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Armour v. City of Beaver*, 271 F.3d 417, 420 (3d Cir. 2001)).

## III

### A

#### 1

As an initial matter, Robinson's deliberate indifference claim is governed by the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's Cruel and Unusual Punishment Clause. The Eighth Amendment applies "after sentence and conviction." *Hubbard v. Taylor,* 399 F.3d 150, 164 (3d Cir. 2005) (quoting *Graham v. Connor*, 490 U.S. 386, 392 n.6 (1989)). The Court assumes Robinson had not been convicted and sentenced when his wraps were taken away on February 1, 2019.[3]

---

[3] Robinson's status on this date is unclear from the record. The docket contains separate notices dated in June and July of 2019 that Robinson served his sentence and was not in custody.

An inmate's Fourteenth Amendment due process rights before conviction and sentencing are "at least as great" as his Eighth Amendment protections after conviction and sentencing. *See City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979)). The Due Process Clause prohibits deliberate indifference to "serious" medical needs. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). To prevail on a deliberate indifference claim, the plaintiff must show a serious medical need and that a prison official was deliberately indifferent to that need. *See id.*

There is a "critical distinction" between a deliberate indifference claim based on the inadequacy of medical care and such a claim based on the denial or delay of care. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017). When care is provided (but allegedly inadequate), it is presumptively proper "absent evidence that it violates professional standards of care." *Id.* Also, it is "difficult" to show deliberate indifference because "prison officials are afforded considerable latitude" for their treatment and diagnoses. *Palokovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017); *see also United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979) (courts deciding inadequacy-of-care claims are "generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law" (internal quotation marks omitted)); *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("well-

---

But in Robinson's amended complaint, which he filed in December of 2019, he describes himself as an "[u]nsentenced Berks County [d]etainee." (ECF 8 at 4.) Moreover, in a prior memorandum the Court assumed Robinson had not been convicted and sentenced on February 1, 2019. *See* (ECF 11 at n.8). In any event, the Court's analysis in this case would be the same if it concluded Robinson had been convicted and sentenced by that date and, as a consequence, evaluated his deliberate indifference claim under the Eighth Amendment rather than the Fourteenth Amendment. *See infra* n.5 and accompanying text; *e.g.*, *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581–82 (3d Cir. 2003) (applying the Eighth Amendment standard to a pretrial detainee's Fourteenth Amendment deliberate indifference claim).

established" that if a physician "exercises professional judgment his behavior will not violate a prisoner's constitutional rights").

Accordingly, an inadequacy-of-care claim requires objective evidence the "particular treatment or diagnosis fell below a professional standard of care." *Pearson*, 850 F.3d at 536. Although medical expert testimony "could be helpful" for such a claim when "as laymen, the jury would not be in a position" to determine whether prison officials were deliberately indifferent, it is not required when other extrinsic proof suffices. *Id.*

Further, mere negligence is not enough. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015). At minimum, the plaintiff must show the defendant acted with "reckless disregard" to the plaintiff's medical needs. *See Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019) (quoting *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016)).[4]

---

[4] For convicted and sentenced prisoners under the Eighth Amendment, deliberate indifference requires the defendant to be "subjectively aware" of the risk of harm to the plaintiff. *See Farmer v. Brennan*, 511 U.S. 825, 829 (1994). The standard is less settled for inmates who haven't been convicted and sentenced. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 n.5 (3d Cir. 2003); *see also Brawner v. Scott Cnty., Tennessee*, 14 F.4th 585, 593–597 (6th Cir. 2021) (describing circuit split and holding a pretrial detainee must prove "more than negligence but less than subjective intent—something akin to reckless disregard" (internal quotation marks omitted)). The Court need not resolve this issue, however, because facts sufficient to support a finding of objective recklessness would also support an inference of subjective indifference. *See Pearson*, 850 F.3d at 535 (circumstantial evidence and witness testimony can be used to prove deliberate indifference); *Farmer*, 511 U.S. at 842 (1994) (factfinder can conclude a prison official "knew of a substantial risk from the very fact that the risk was obvious"); *see also Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017) ("To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm" (quoting *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009))).

2

i

Robinson contends a "lack of treatment" and/or "neglect of medical care" by Kirsch and Wilkinson could have or did "cause further damage" to his carpal tunnel syndrome. (Pl's Interrog. Resps. 8.) Specifically, Robinson asserts Kirsch and Wilkinson "took medically needed wraps prescribed by the [doctor] for my hands." (*Id.* at 10.) Because Robinson received treatment, his claim is one of inadequacy of care rather than delay or denial of care. *See Pearson*, 850 F.3d at 535.

Robinson's carpal tunnel syndrome is a serious medical need. *See Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003). The only issue is whether Kirsch or Wilkinson were deliberately indifferent to that need. *See Natale*, 318 F.3d at 582. On this record, a reasonable jury could not find they were.

Kirsch and Wilkinson both saw Robinson for appointments to address his condition. (ECF 53 at 18, 32.) At Robinson's January 29, 2019, appointment with Kirsch, Kirsch concluded Robinson had carpal tunnel based on Robinson's description of his condition. (ECF 53 at 32.) Kirsch then obtained and reviewed Robinson's medical records, which did not show a carpal tunnel diagnosis or the need for braces. *See* (Ex. B 319–67). The records did show, however, that he received cervical spine treatment and a diagnosis for a cervical spine condition capable of causing hand numbness. *See* (Ex. B 328, 334).

Meanwhile, Wilkinson twice saw Robinson in the Berks County Jail medical department without his ACE wraps on even though in her judgment he needed to wear

them at all times.  (ECF 53 at 18.)  Wilkinson then reported Robinson's noncompliance to Kirsch, who ordered discontinuation of the wraps.  (ECF 53 at 14, 17–18, 22.)

Kirsch's and Wilkinson's treatment of Robinson's carpal tunnel syndrome is presumptively adequate.  *See Pearson*, 850 F.3d at 535.  Kirsch and Wilkinson made a medical decision to take back the ACE wraps Robinson was not wearing.  Such decisions, informed by review of Robinson's records and his appointments with them, and based on professional judgment, are owed considerable latitude.  *See Palokovic*, 854 F.3d at 227; *Brown*, 903 F.2d at 278; *e.g.*, *McDonald-Witherspoon v. City of Phila.*, 481 F. Supp. 3d 424, 444 (E.D. Pa. 2020) (granting summary judgment on inadequacy-of-care claim because physician treated plaintiff and exercised professional judgment).  Moreover, the record lacks any objective evidence that could rebut the presumption that Kirsch's and Wilkinson's care was adequate.  *See Pearson*, 850 F.3d at 536.  Given a jury would not be equipped to determine whether their treatment fell below a professional standard of care, expert testimony likely would be necessary—and Robinson presents none.  *See id.*; *infra* subsection III.B.2.

Nothing in the record shows Kirsch or Wilkinson acted with the requisite state of mind—at least reckless disregard—in treating Robinson's carpal tunnel syndrome.  *See Natale*, 318 F.3d at 581 n.5.  Robinson asserts that the Berks County Jail "medical staff," presumably Kirsch or Wilkinson, could have provided him braces.  (Pl's Interrog. Resps. 10.)  Even if this is true, Robinson is merely disagreeing with Kirsch and Wilkinson's choice not to do so.  *See Monmouth Cnty. Corr. Inst. v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987); *e.g.*, *Moore*, 767 F. App'x at 340–41 (affirming summary judgment on inadequacy-of-care claim because plaintiff's claim was based on "personal

10

dissatisfaction" with treatment). And even if the Court were to further assume that choice was incorrect, Robinson would be alleging no more than an unintentional misjudgment. *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (it is "well-settled that claims of negligence or medical malpractice," absent a "more culpable state of mind," do not amount to deliberate indifference); *Parkell*, 833 F.3d at 337 (inadequate care resulting from an "error in medical judgment" is not actionable (quoting *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993))).

Nor is it relevant that Kirsch and Wilkinson apparently did not review Robinson's EMG evaluation showing carpal tunnel syndrome before deciding to take the wraps back. Kirsch and Wilkinson acted based on the information available to them. *See McDonald-Witherspoon*, 481 F. Supp. at 445–46 (finding no support for the proposition that a physician who exercises professional judgment can be deliberately indifferent "based solely on a failure to independently research the patient's medical history" (citing *Doby v. DeCrescenzo*, 171 F.3d 858, 876 (3d Cir. 1999))). While Robinson subsequently told the Berks County Jail medical department that Einstein Medical Center had his EMG results, there is no evidence in the record either Kirsch or Wilkinson received this message. *See* (ECF 53 at 27); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (§ 1983 defendants must have "personal involvement in the alleged wrongs").

ii

Robinson also alleges Wilkinson and Kirsch "l[ying] on medical records could have or did cause further damage" to his carpal tunnel syndrome. (Pl's Interrog. Resps. 8.) As best the Court can tell, Robinson claims there is a contradiction between a Berks

11

County Jail record suggesting Robinson's ACE wraps were taken away in part because he was not wearing them all the time and a Chester County Prison record indicating they were taken away because he was wearing them while weightlifting. *See* (*id.* at 10); (Resp. to Summ. J. Mot. ¶ 1, ECF 56).

The record does not show this alleged conduct constituted deliberate indifference to Robinson's condition. *See Pearson*, 850 F.3d at 535. Kirsch ordered the removal of Robinson's wraps after seeing him for an appointment, reviewing medical records from his specialist and primary care provider and, as Robinson suggests, hearing from Wilkinson that Robinson was not wearing his wraps all the time. (ECF 53 at 14, 17, 22.) The Court will not second-guess Kirsch's professional judgment. *See Walker*, 599 F.2d at 575 n.2. Further, there is no evidence either Wilkinson or Kirsch told the Chester County Prison medical department why Robinson's wraps were taken away or anything else about his condition. *See Rode*, 845 F.2d at 1207. There is also no support in the record for Robinson's assertion that Berks County Jail doesn't have weights. (Resp. to Summ. J. Mot. ¶ 1.)

To the extent Robinson claims Kirsch "lie[d]" when he allegedly denied Robinson access to his medical records because of HIPAA or fabricated a conversation with Robinson's doctor, neither allegation establishes deliberate indifference. The first allegation has nothing to do with the adequacy of the care Kirsch provided Robinson. *See, e.g.*, *McGinnis v. Hammer*, 751 F. App'x 287, 292, n.3 (3d Cir. 2018) (concluding *pro se* inmate plaintiff did not state inadequacy-of-care claim because he failed to allege how treatment "fell below any professional standard of care"). Robinson's support for the second allegation—that his doctor separately told him and his mother that the

doctor never spoke with Kirsch—is hearsay the Court cannot consider on summary judgment. *See Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009).

### B

### 1

A medical malpractice claim is defined by challenged conduct that took place "within the course of a professional relationship" and "questions of medical judgment beyond the realm of common knowledge and experience." *Doe v. Hosp. of Univ. of Pennsylvania*, 546 F. Supp. 3d 336, 345 (E.D. Pa. 2021). Medical malpractice is the "unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient." *Grossman v. Barke*, 868 A.2d 561, 566 (Pa. Sup. Ct. 2005) (internal quotation marks omitted)).

To avoid summary judgment on a medical malpractice claim, the plaintiff must show his physician owed him a duty and breached it, the breach caused the plaintiff harm and he suffered damages as a result. *Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003). Expert testimony is generally necessary to establish "the applicable standard of care, the deviation from that standard, causation and the extent of the injury." *Id.* One "very narrow" exception applies when the defendant's lack of care and its relationship to the plaintiff's injuries are "so obvious as to be within the range of experience and comprehension of even non-professional persons." *Id.* (quoting *Hightower-Warren v. Silk*, 698 A.2d 52, 54 n.1 (1997)); *Brown v. Hahnemann Univ. Hosp.*, 20 F. Supp. 3d 538, 543 (E.D. Pa. 2014) (citing *Grossman*, 868 A.2d at 567).

2

To create a genuine issue of fact, Robinson must present expert testimony on the applicable standard of care for his carpal tunnel syndrome, Kirsch and Wilkinson's alleged breach of it, how that breach aggravated his condition and the extent of the damage. *See Toogood*, 824 A.2d at 1145. He has not done so.

Robinson says he tried to obtain an "expert[']s or professional medical opinion or statement" to support his claims from "all" his medical providers and that "if needed" he will subpoena "doctors and medical experts." (Resp. to Summ. J. Mot. ¶ 3.) Contingency and possibility is not enough to survive summary judgment. *See Acumed LLC*, 561 F.3d at 228. Even if it were, the Court has no basis to determine whether the proposed expert opinions would satisfy Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). By failing to present medical expert testimony, Robinson has not fulfilled an "indispensable requirement" for his medical malpractice claim. *Mitchell v. Shikora*, 209 A.3d 307, 315 (Pa. 2019).

The limited exception to the expert-testimony requirement does not apply. *See Brown*, 20 F. Supp. 3d at 542–44 (granting summary judgment on *pro se* plaintiff's medical malpractice claim because he lacked expert testimony and claim's basis wasn't sufficiently obvious for exception to apply). It is not obvious that Kirsch or Wilkinson breached the standard of care in treating Robinson's carpal tunnel syndrome or how the alleged breach would have aggravated Robinson's condition. *See Hightower-Warren*, 698 A.2d at 54 n.1; *Brown*, 20 F. Supp. 3d at 543.

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.